FILED
NOV 12 2009

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

IVAN ORTEGA-GONZALEZ,

        Petitioner,

v.

GUY HALL,

        Respondent.

Civil No. 08-368-AC

FINDINGS AND RECOMMENDATION

ALISON M. CLARK
Assistant Federal Public Defender
101 SW Main Street
Suite 1700
Portland, OR 97204

        Attorney for Petitioner

JOHN R. KROGER
Attorney General
KRISTEN E. BOYD
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301

        Attorneys for Respondent

1 - FINDINGS AND RECOMMENDATION -

ACOSTA, Magistrate Judge.

Petitioner, an inmate at the Two Rivers Correctional Institution, brings this habeas corpus action pursuant to 28 U.S.C. § 2254. For the reasons that follow, the Petition for Writ of Habeas Corpus should be DENIED.

## BACKGROUND

On May 20, 2003, a Multnomah County grand jury indicted Petitioner, along with a co-defendant, on five counts of Robbery in the First Degree with a firearm, one count of Robbery in the First Degree, nine counts of Robbery in the Second Degree with a Firearm, and five counts of Kidnaping in the Second Degree with a Firearm. Charges were also pending against Petitioner and his co-defendant in Clackamas County for an additional Robbery.

Following extensive settlement negotiations, Petitioner entered a plea agreement. With the assistance of an interpreter, Petitioner reviewed the plea agreement at length with his attorney and with the trial court. Petitioner's attorney also involved the Mexican Consulate to assist Petitioner in understanding and appreciating the risks he was facing, and to evaluate settlement offers.

Under the terms of the plea agreement, Petitioner agreed to plead guilty to five counts of Robbery in the First Degree with a Firearm and five counts of Kidnaping in the Second Degree with a Firearm. Petitioner also agreed to plead guilty to one count of Robbery in the First Degree in Clackamas County. In exchange, the state agreed to dismiss the remaining charges and stipulate to a total sentence of 110 months of imprisonment.[1]

---

[1] The maximum possible sentence Petitioner faced on all of the charges was 170 years of imprisonment.

2 - FINDINGS AND RECOMMENDATION -

The stipulated sentenced was conditioned upon Petitioner's obligation to testify truthfully in the proceedings against his co-defendant. The plea agreement provided that if Petitioner failed to do so, the result would be open sentencing with each side free to argue for or against consecutive sentences for any and all counts.

Petitioner ultimately refused to testify against his co-defendant. At sentencing, Petitioner presented evidence that the co-defendant had threatened Petitioner and his family, that the co-defendant made threatening remarks and menaced Petitioner when Petitioner was called to testify, and that the co-defendant physically attacked the prosecutor at his own sentencing. All of the evidence related to events that occurred after the change of plea hearing; there was no evidence that Petitioner's trial counsel was aware of the threats prior to entry of the plea agreement.

The trial court found Petitioner breached the plea agreement and proceeded to open sentencing. After hearing testimony and argument, the trial court sentenced Petitioner to the state's recommendation of 180 months of imprisonment.

Petitioner directly appealed. The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. *State v. Ortega-Gonzalez*, 195 Or. App. 546, 99 P.3d 1239, *rev. denied*, 337 Or. 657, 103 P.3d 640 (2004).

Petitioner then sought state post-conviction relief ("PCR"). Following an evidentiary hearing, the state PCR trial judge denied relief. On appeal, the Oregon Court of Appeals affirmed without opinion and the Oregon Supreme Court denied review. *Ortega-Gonzalez v. Hall*, 215 Or. App. 112, 168 P.3d 338, *rev. denied*, 343 Or. 555, 173 P.3d 832 (2007).

3 - FINDINGS AND RECOMMENDATION -

On March 21, 2008, Petitioner filed his Petition for Writ of Habeas Corpus in this Court. Petitioner alleges one ground for relief:[2]

> **Ground One:** Trial Counsel failed to provide legal advice and services under the Sixth and Fourteenth Amendments of the United States Constitution.
> **Supporting Facts:** Trial counsel failed to ensure petitioner's decision to waive his rights to a jury trial and enter a guilty plea was knowingly, voluntarily, and intelligently made.

Respondent argues Petitioner procedurally defaulted this claim by failing to fairly present it in his petition for review to the Oregon Supreme Court. Respondent further argues that, in any event, the state PCR court's decision denying relief on this claim is entitled to deference.

## DISCUSSION

### I. Procedural Default

#### A. Legal Standards

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may grant habeas corpus relief. 28 U.S.C. § 2254(b)(1). A state prisoner satisfies the exhaustion requirement by fairly presenting his claims to the appropriate state courts at all appellate stages offered under state law. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Casey v. Moore*, 386 F.3d 896, 915-16 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005). A petitioner must seek discretionary review in the state's highest court in order to fully exhaust his state remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). A "fair presentation" requires that a petitioner describe the operative facts and the federal legal theory on which he bases his claim in a procedural context in which the claims may be considered. *Davis v.*

---

[2]Petitioner included a second claim for relief in his Petition, which he subsequently withdrew.

4 - FINDINGS AND RECOMMENDATION -

*Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008); *accord Castille v. Peoples*, 489 U.S. 346, 351 (1989); *Peterson v. Lampert*, 319 F.3d 1153, 1155-56 (9th Cir. 2003).

When a state prisoner fails to exhaust his federal claims in state court, and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. *Casey*, 386 F.3d at 920; *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991). Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

**B.     Analysis**

In his Amended Petition for Post-Conviction Relief, Petitioner alleged one claim:

> To the best of Petitioner's knowledge and belief he was denied adequate and effective assistance of counsel under the Sixth and Fourteenth Amendments to the Constitution of the United States and under Article I, Section 11, of the Constitution of Oregon. Trial counsel failed to provide legal advice and services which met the minimum standards required of a criminal defense attorney. The failure to give adequate representation includes, but is not limited to, the following specific allegations in that the defense attorney did not:
>
> (A)     Ensure that Petitioner's decision to waive his rights to a jury trial and enter a guilty plea was knowing, voluntary, and intelligently made; and
>
> Petitioner intended to accept a stipulated sentence of 110 months. Petitioner felt pressured to accept an open sentencing plea agreement to avoid testifying against his co-defendant, Noel Reyes-Mauro, and the possible harmful consequences that might result from his testimony.

Respondent's Exhibit (hereafter "Resp. Exh.") 110, p. 2. At the PCR trial, his attorney argued the basis for the claim:

5 - FINDINGS AND RECOMMENDATION -

> COUNSEL: ... [Petitioner] thought his plea was involuntary based on what he perceived were threats from the co-defendant, Mr. Reyes Mauro, if he decided to cooperate with the State and offer testimony against him at his trial.
>
> He doesn't comply with the cooperation agreement, he loses out on a 110-month plea offer that was contingent on his testimony against the co-defendant, so it ends up in open sentencing where he gets a consecutive sentence to two counts of Robbery in the First Degree under Measure 11.
>
> So, in effect, he received 70 more months than he would have had he cooperated with the State as part of his negotiated plea. And I'll just rest on his deposition testimony and the exhibits that are in evidence.
>
> THE COURT: Counsel, how does his alleged fear of Mr. Reyes translate into inadequacy of counsel?
>
> COUNSEL: Well, I guess I can only say that he needs to insure that decision he makes is whether to waive his right to trial or plead guilty shouldn't be coerced in any fashion. And I guess there's no evidence that any steps were made to insure that [Petitioner] has come to no harm from Mr. Reyes Mauro.
>
> I think I would agree it's an additional burden to place on counsel.

Resp. Exh. 118, pp. 9-10.

On appeal, Petitioner's Assignment of Error stated: "[t]he post-conviction court erred in denying petitioner relief when the evidence was uncontradicted that petitioner felt pressured by his trial attorney." Resp. Exh. 120, p. 2. His "Summary of Argument" stated, *inter alia*:

> In this case, the plea was not voluntary as petitioner felt coerced because his trial attorney failed to take reasonable steps to insure his safety from the co-defendant he was required to testify against.

*Id.* He elaborated on this argument:

> In this case petitioner entered into a plea agreement which, though including a generally favorable 110-month recommendation by the state, was contingent on him testifying against his co-defendant. Failure to so testify would result in open sentencing. Petitioner was terrified of being retaliated against by his co-defendant. The post-conviction court found this fear to be reasonable and well-founded.

6 - FINDINGS AND RECOMMENDATION -

>Nevertheless, counsel took no steps to insure that petitioner was kept safe from his co-defendant. As a result, when petitioner was called to testify against his co-defendant, he panicked and did not cooperate with the state. Because of this breach of the plea agreement, the state sought and obtained a 180-month sentence from the trial court. Trial counsel held out the hope of obtaining a 110-month sentence without taking the proper steps to ensure that there was a reasonable possibility that petitioner would be able to fulfill the requirements of that sentence. In short, trial counsel failed to do anything to ensure that the 110-month sentence was anything but a mirage. The failure to ensure that there was a possibility of fulfilling the agreement rendered the plea involuntary as it was predicated on a condition petitioner would be unable to fulfill.

*Id.* at p. 5 (citations to the record omitted).

In his Petition for Review to the Oregon Supreme Court, Petitioner stated the "Question Presented" as "Was trial counsel inadequate and ineffective for advising Petitioner to enter a plea agreement that there was no realistic possibility he could fulfill?" Resp. Exh. 122, p. 1. In support, Petitioner reiterated, verbatim, the argument contained his brief on appeal as quoted above. *Id.* at pp. 4-5.

Given these circumstances, Petitioner did fairly present the operative facts underlying his claim of ineffective assistance of counsel. While Petitioner's claim may not have been artfully presented at the PCR trial level, it was sufficiently similar to the claims raised on appeal and petition for review. Accordingly, Petitioner did not procedurally default his claim. Nevertheless, as the following discussion indicates, Petitioner is not entitled to relief on the merits of his claim.

7 - FINDINGS AND RECOMMENDATION -

## II. Relief on the Merits

### A. Legal Standards

Under 28 U.S.C. § 2254(e)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, habeas corpus relief may not be granted on any claim that was adjudicated on the merits in state court, unless the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court's determination of a factual issue "shall be presumed to be correct." 28 U.S.C. § 2254(e)(1). Petitioner carries the burden of rebutting this presumption of correctness by clear and convincing evidence. *Id.*

A state court decision is not considered "contrary to" established Supreme Court precedent unless it "applies a rule that contradicts the governing law set forth in [Supreme Court cases]" or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003). A federal habeas court cannot overturn a state decision "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

A state court decision can be overturned for legal error only if the state court's application of Supreme Court case law was "objectively unreasonable." *Penry v. Johnson*, 532 U.S. 782, 793

8 - FINDINGS AND RECOMMENDATION -

(2001). Federal courts "may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

The Supreme Court has established a two-part test to determine whether a defendant has received ineffective assistance of counsel. Under this test, a petitioner must prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-888 (1987).

To prove a deficient performance of counsel, a petitioner must demonstrate that trial counsel "made errors that a reasonably competent attorney as a diligent and conscientious advocate would not have made." *Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985). The test is whether the assistance was reasonably effective under the circumstances, and judicial scrutiny must be highly deferential, with the court indulging a presumption that the attorney's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Where a petitioner has pleaded guilty or no contest on the advice of counsel, the "voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). The prejudice prong, in turn, requires the petitioner to show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Id.* at 59; *Lambert v. Blodgett*, 393 F.3d 943, 980 (9th Cir. 2004), *cert. denied*, 546 U.S. 963 (2005).

**B.     Analysis**

At Petitioner's change of plea hearing, the trial judge engaged Petitioner in an extensive colloquy about the terms of his agreement and the consequences thereof:

> THE COURT: ... I have a petition to enter a plea of guilty to five counts of Robbery in the First Degree with a Firearm, five counts of Kidnaping in the Second Degree with a Firearm. In the middle of the second page, right here, is a signature, and I want to know if that's your signature. You have a copy in front of you, sir.
>
> PETITIONER: (Through an interpreter) Yes.
>
> THE COURT: Before you signed this paper, did you discuss it thoroughly with both your lawyer and through -- did you need the use of an interpreter?
>
> PETITIONER: Always, yes.
>
> THE COURT: Okay, was the interpreter present?
>
> PETITIONER: Yes.
>
> THE COURT: And did you understand everything your lawyer told you about this paper?
>
> PETITIONER: Yes.
>
> THE COURT: In just a moment, I'm going to go through the same thing the lawyer talked to you about in this paper, but I next want to talk bout this other document that says Agreement at the top. And it consists of one, two, three, four -- a total of five pages, and again, there's a line that says, "Ivan Ortega-Gonzalez," on the fifth page, right here, and I want to know if that's your signature?
>
> PETITIONER: Yes.
>
> THE COURT: And again, before you signed the paper, did you discuss it all with your lawyer through your interpreter?
>
> PETITIONER: Yes.
>
> THE COURT: Do you understand everything that was discussed with you?

>PETITIONER: Yes.

Resp. Exh. 104, pp. 10-11.

The trial judge then addressed Petitioner's attorney about the nature of his discussions with Petitioner:

>THE COURT: Now, Mr. Karpinski, for the record, did you discuss the entire content of each of these documents with your client?
>
>COUNSEL: Yes, on the plea petition, we went over line by line each paragraph before he signed it. I'm comfortable that he fully understands the rights he's giving up in paragraph 5; the maximum sentences on the cases; the plea offer as described by [the prosecutor]; and the requirements of the cooperation agreement.
>
>With respect to the cooperation agreement I went over the agreement about how -- you, what -- there was going to be 10 counts here; there's going to be a count in Clackamas County; that the net effect of this is that it's going to be 110 months, and credit for time served if he performs under this cooperation agreement.
>
>I also talked to him about ways that he might lose this deal. We talked about that repeatedly. Particularly that he has to continue to cooperate; he has to continue -- he has to testify truthfully and continue to cooperate with the State, through the resolution of [his co-defendant's] matters.
>
>So I think he's fully apprized of all the -- all the matters contained in both the plea petition and the Agreement.

*Id.* at pp. 11-12.

The trial judge proceeded to go over in some detail Petitioner's rights and options in entering the guilty plea, he discussed each of the charges individually with Petitioner, and he advised Petitioner of the maximum possible sentence of 170 years in prison. The Court then addressed the cooperation agreement as follows:

>THE COURT: Now, I've been told that the agreement is that we run a lot of these sentences at the same time, and so the maximum sentence that would be imposed is 110 months. That would be the agreement we've reached. Is that correct, sir?

11 - FINDINGS AND RECOMMENDATION -

PETITIONER: Yes.

\* \* \*

THE COURT: Now, I'm also told that the reason that the State would agree to the 110 months is if you fulfilled the terms of this other document which is entitled Agreement. Is that your understanding?

PETITIONER: Yes.

THE COURT: I want to go over parts of this agreement to make sure you understand. First is that you would plead guilty to the ten counts we discussed here as well as another count of Robbery in the First Degree with a Firearm in Clackamas County, Oregon; is that your understanding?

PETITIONER: Yes.

THE COURT: And that as to the Clackamas County matter, if you fully comply with the Agreement you'll receive a sentence of 90 months to run concurrent which would not add any more time to your sentence. Is that your understanding?

PETITIONER: Yes.

THE COURT: Now, in order to gain the benefit of that bargain, this document says that you're willing to cooperate with the State of Oregon, when they request it of you, that you would cooperate fully and truthfully which would include meeting with members of the police force or district attorney's office, which would include testifying in cases if called upon in putting this case against your co-defendant. Is that your understanding?

PETITIONER: Yes.

THE COURT: And do you understand that if you don't fully comply with this agreement you are already -- you will have already given up your right to trial in this case, and the State is free to ask for any sentence the law allows, which I assure you will be greater than 110 months? Do you understand that?

PETITIONER: Yes.

\* \* \*

12 - FINDINGS AND RECOMMENDATION -

> THE COURT: Now, sir, has anyone promised you anything that we haven't discussed?
>
> PETITIONER: No.
>
> THE COURT: Has anybody threatened or forced you to sign either the Petition to Enter a Plea of Guilty or the Cooperation Agreement?
>
> PETITIONER: No.

*Id.* at 17-19.

Petitioner now argues that his trial attorney had reason to believe Petitioner's co-defendant was menacing and dangerous and that, to assist his client in complying with the cooperation agreement, it was crucial for counsel to make every effort to ensure Petitioner was protected. Under the circumstances, Petitioner claims, this meant it was necessary for counsel to coordinate with the state's attorney, arrange for special housing at the jail, and otherwise ensure Petitioner would be protected from the co-defendant's reprisals. Because counsel did not do so, Petitioner concludes, his plea was not voluntary, knowing, or intelligent.

The state PCR courts rejected this claim. In the PCR trial proceeding, the State presented the efforts counsel made to secure the plea agreement at Petitioner's request and submitted an affidavit from Petitioner's criminal trial attorney stating, *inter alia*:

> 6. . . .[W]hen [Petitioner] was called to testify against the other defendant, he panicked and refused to provide information against the co-defendant. This was in part due to various threats that were made by the co-defendant through third parties against [Petitioner] and his family. The co-defendant was a true psychopath and [Petitioner] was truly afraid and his fear was probably reasonable.
>
> * * *

13 - FINDINGS AND RECOMMENDATION -

> 8. As a result of [Petitioner's] unwillingness to follow through with the plea deal, he ultimately received a 180-month sentence from Judge Marshall Amiton despite my efforts to hold the total sentence to something reasonable.
>
> 9. I did later testify on [Petitioner's] behalf in a Clackamas County robbery case prosecuted after [Petitioner] blew the plea deal. Fortunately, the Clackamas County Circuit Court sentenced [Petitioner] to 90 months concurrent with the rest of his sentences, so his total sentence is 180 months.
>
> 10. Although I regret that [Petitioner] received a long prison sentence, I know I did everything I could for him. He put himself in a very difficult position by participating in four armed robberies with his co-defendant and then confessing to the police. Yet, when favorable deals were arranged, he let his fear of the co-defendant keep him from making the best of a bad business. I cannot think of any other steps I reasonably could have taken to improve his chances for an acquittal, had he gone to trial, or for a shorter sentence.

Resp. Exh. 116, pp. 3-4.

The State also presented the transcripts from the change of plea hearing and the sentencing, as well as an affidavit of the prosecuting attorney, who explained that the offer made to Petitioner was the best offer the district attorney's office was prepared to make.

In Petitioner's deposition for the PCR proceeding, he acknowledged that he was aware that he would not get the deal for 110 months if he did not testify against his co-defendant, and explained to the state's attorney the reason he did not testify as follows:

> COUNSEL: Mr. Gonzalez, you knew that you weren't going to get the deal for 110 months if you didn't testify against your co-defendant, right?
>
> PETITIONER: (Through an interpreter.) Well, as I said, I didn't have any other option.
>
> COUNSEL: Why couldn't you testify against your co-defendant?
>
> PETITIONER: No.
>
> COUNSEL: Why couldn't you testify against him?

14 - FINDINGS AND RECOMMENDATION -

> PETITIONER: I don't know, but I know I couldn't.
>
> COUNSEL: Were you scared of your co-defendant?
>
> PETITIONER: Well, in the first place, I hadn't known him very long. It hadn't been very long a time since I had met him.
>
> COUNSEL: So why didn't you testify against him then?
>
> PETITIONER: Because I do not want to have to spend time in the hole. Or how do I know? Maybe they'll be beating me.

Resp. Exh. 114, p. 16. On cross-examination, Petitioner's PCR trial attorney clarified:

> COUNSEL: Mr. Gonzalez, did you realize the sentence was up to the judge and you might not get a 110-month sentence but a longer sentence when you pled guilty?
>
> PETITIONER: No.

*Id.* at p. 18.

> The PCR trial judge denied relief. At the close of the evidentiary hearing, the judge stated:
>
> THE COURT: ... Now, the Court has reviewed the [State's] trial memorandum and the Court finds that it is very persuasive in its reasoning, and the Court adopts that reasoning as its own and incorporates that reasoning in the Court's findings and conclusions.
>
> It is ordered that the petition for post-conviction relief is denied based on the following findings and conclusions.
>
> First, the petitioner did receive adequate assistance of trial counsel.
>
> Further, [P]etitioner knowingly, intelligently, and voluntarily pled guilty to the charges.
>
> Next, trial counsel did not coerce the [P]etitioner into accepting the State's plea offer.

15 - FINDINGS AND RECOMMENDATION -

> Next, [P]etitioner failed to comply with his obligations under the plea agreement that he cooperate with the State and the prosecution of Noel Reyes Mauro, —a-u-r-o.
>
> And, finally, petitioner has failed to sustain his burden of proof by a preponderance of the evidence as to all of his claims for relief.
>
> This petition involves both federal and state constitutional issues. It is the judgment of the Court that judgment be given in favor of the [State].

Resp. Exh. 118, pp. 17-18.

The PCR trial judge's findings of fact are amply supported by the record. Petitioner did not present evidence in support of his claims that there was something more counsel could have done or was constitutionally required to do before the plea agreement was reached. Moreover, Petitioner failed to show prejudice as there is no evidence to support a claim that his attorney could have negotiated a better settlement or that Petitioner would not have entered the plea agreement in the first place, but would have instead proceeded to trial. The PCR judge's findings are entitled to deference because Petitioner did not present clear and convincing evidence in this proceeding to overcome them.

Finally, the PCR court's conclusion that Petitioner did not receive ineffective assistance of counsel is not contrary to or an unreasonable application of clearly established federal law. As such, Petitioner is not entitled to habeas corpus relief on the merits of his claim.

## **RECOMMENDATION**

For these reasons, the Petition for Writ of Habeas Corpus should be DENIED, and a judgment of DISMISSAL should be entered.

## SCHEDULING ORDER

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due November 24, 2009. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 10 days after filing of the objections. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 12th day of November, 2009.

John V. Acosta
United States Magistrate Judge

17 - FINDINGS AND RECOMMENDATION -